Logan and Mr. Stallmont. May it please the court, Brad Bogan for Edward Mesquiti. Mesquiti raises three issues in this case, one of which is foreclosed by this court's precedent, so he raises it solely for the purpose of preserving it for further review. Of the remaining two issues, I'd like to focus on the first one, which is the argument that the district court reversibly erred by requiring him to proceed crosse at a critical stage in the proceedings of this case, specifically the three weeks preceding trial. I mean, pardon the interruption so early, but are you distinguishing between relinquishing the right to counsel on the one hand and proceeding to represent himself on the other? Well, as this court has noted, the Sixth Amendment right to counsel is effective unless and until it's waived. The Sixth Amendment right to representation does not become effective unless it is affirmatively invoked, so they're two sides of the same coin. The default position is that a defendant will be represented by counsel, and in this case the district court had appointed counsel to represent Mr. Mesquiti, and he was represented at the time that the district court forced him to proceed crosse. What precipitated this was that Mesquiti had been making crosse filings in the months leading up to the trial in this case. He was espousing these sovereign citizen ideas and disputing the district court's jurisdiction over the matter and over him, and essentially just refusing to acknowledge the court's authority in the case. At one point, he was sent off for a competency hearing to determine whether he was even competent to stand trial, and after that evaluation, the psychiatrist talked about these beliefs that he has and that they are, you know, that he firmly believes them, but nevertheless he was competent to assist his counsel and to understand the proceedings and to proceed to trial. So at a competency hearing, the district court found him competent, and things moved forward. But then there was a docket call three weeks before trial, and at that point Mesquiti said something along the lines of, you know, what is this court's claim, please state the claim against me, more of this sovereign citizen ideology, which the court took to be a motion to dismiss the indictment, and the court denied it. Then at that point, the court, there was an exchange between the court and Mesquiti at which the court said, Your Honor, I haven't accepted Mr. Villarreal, who is the assistant federal public defender who had been appointed to represent him, I haven't accepted Mr. Villarreal as my attorney. I don't consent to him being my attorney. I have never asked him to be my attorney. And so then the court responds, okay then, so I construe that as a motion to withdraw Mr. Villarreal as your attorney. You have a right to represent yourself. The motion is granted. You will represent yourself. Mr. Villarreal will be standby counsel. Now, that was error because this court requires a two-step process before a defendant may be allowed to proceed pro se. First, the defendant must clearly and unequivocally invoke his right to self-representation. Mesquiti didn't do that here. In this hearing and really at all points leading up to it, he was just spouting this nonsense about the court not having a claim over him as a flesh-and-blood human being as opposed to the corporate identity that was ostensibly charged in the indictment. And evidently, the district court was frustrated with his behavior, but the court should not have just said, as it did here, okay then, you'll be representing yourself. Because again, in order for the Sixth Amendment right to self-representation to become effective, the defendant must clearly and unequivocally invoke that right. And that didn't happen here. Now, didn't he warn Mesquiti about the pitfalls of self-representation at this point or at some point? Not prior to that point. It's only at this point that the district court starts saying really in just a general way that it's a bad idea to represent yourself. You shouldn't do this. You shouldn't act as your own attorney. Now, had Mesquiti made a clear and unequivocal request to proceed pro se, that's what the district court would have to do. But even if what Mesquiti said here is construed as a clear and unequivocal request, the district court's phoreticology really was insufficient. Because like I said, the district court just advised him in kind of a general, generic way that this is a bad idea, you shouldn't do it. But the court didn't engage him to determine that Mesquiti really understood the consequences and the dangers and the pitfalls of acting as his own attorney in this case. And it's not enough that Mesquiti was expressing a general dissatisfaction with his attorney or even saying that he wanted to fire his attorney or that he was refusing to acknowledge the legitimacy of the proceedings. Again, there has to be a clear and unequivocal request, which he did not make. Now, the government has been arguing that Mesquiti manifested a desire to represent himself by virtue of his conduct in this case. But the cases that have held that a defendant can waive the right to counsel by conduct involve different factual situations. The two cases that the government has cited in the 28J letter that filed a few days ago, one of them, Fowler, involved a situation where the defendant was financially able to retain counsel and the district court had advised him more than once, you need to hire counsel and he failed to do so by the date that the court had set. And so the district court said, you'll be proceeding pro se. And this court, with really very little analysis, just said, you know, the facts speak for themselves. Little additional authority is required. You know, we don't need to cite any additional authority. He waived his right to counsel and there was no error requiring him to proceed pro se. The other case that the government relies on, Higginbotham, is a habeas case arising out of a 2254 petition. And there was a similar situation in that case. The defendant just kept failing to hire counsel as the district court had instructed him to do. And so the district court, as in Fowler, required him to proceed pro se. And on habeas review, this court, the Federal District Court denied his petition and this court affirmed it, but that affirmance depended on the standard under the AEDPA, which is that the district court's decision was not contrary to a clearly established rule as to whether or not the district court's decision was contrary to a clearly established rule. And the district court's decision was not contrary to a clearly established rule because Feretta, the case that recognized the right to self-representation, didn't address that type of situation where a defendant engages in dilatory conduct. And also— Let me interrupt you here. Everything you're saying is struck right on, but what's being omitted is the overarching fact that your now client was one of these sovereign citizens and Republic of Texas type of thing. So his actions were all to disregard or deny the existence of the state of Texas, the United States, and its courts. And he's had five lawyers, if I'm counting right, Campion, Camargo— He had two or three, depending on how you count. There's some question as to whether— Well, he's had two public defenders accounting you, Villareal— Well, yes. And on appeal, that's, well, yes, five, myself and Mr. Greenberg. So his efforts have clearly been, and the court clearly knew, to be an obstructionist because of his, what do they call it, sovereign citizen situation. Shouldn't we take that into account as well as all of the Ferretta aspects and elements? No. There are other cases this Court has had where a defendant is espousing these similar ideologies and is basically engaging in obstreperous conduct and essentially refusing to cooperate with the proceedings. But that's a different situation from, say, Higginbotham and Fowler, where the defendant was engaging in dilatory conduct that actually delayed the progress of the proceedings. In those cases, the failure to hire an attorney was an impediment to moving forward with the case. That's not what happened here. At all stages, Mr. Muschietti was represented by counsel. Prior to this hearing where the district judge required him to proceed pro se, his appointed assistant federal public defender had said that he was ready for trial and could be ready for trial by the date that the Court had already set. Mr. Villarreal was kept on a standby counsel. Then the morning of the jury trial, at Record 287, the Court again engages Mr. Muschietti and again says, don't represent yourself, and then says, how do you want to proceed? And Mr. Muschietti says, I want to be pro se, sir, because I don't want a lawyer and I don't want Mr. Villarreal. How much more clear could he be? Well, we're not arguing that he was denied the right of — improperly denied the right to counsel at trial. We are arguing that he was improperly denied the right to counsel during those three weeks prior to trial. That statement there is consistent with the whole three weeks. I mean, in other words, it's not as if the judge said three weeks ago, you don't get counsel, whatever, and he's fumbling around, he shows up and he goes, I've been in the desert with no counsel, now I want counsel. This is consistent with exactly what's happened in the prior hearing. That's why I don't really understand your position. He wanted to be pro se before, he wanted to — he made that clear here. I don't understand the three weeks before. It's consistent. It's not inconsistent. If it were inconsistent, then you would have an argument. Well, I don't think there's any case law to support the proposition that a post-hoc acceptance of the district court's decision of this nature amounts to the type of clear and unequivocal request to proceed pro se. This isn't post-hoc acceptance. This is the court again saying, you know, I'm going to tell you again. I mean, Verrierell's been here all along as standby counsel. He's been available to Mr. Moschitti the whole time. And he's saying, I'm telling you again I think this is a bad idea. Now, how do you want to proceed? I want to be pro se, which is consistent with what happened three weeks before. It's not post-hoc. It's consistent. Well, except that Moschitti never said anything of the sort three weeks prior. And, in fact, earlier in the case, when there was a motion by his original hired attorney to withdraw, the magistrate judge conducted that hearing and said point blank to Mr. Moschitti, listen, if you want to represent yourself, you have to clearly and unequivocally make that request. Do you want to represent yourself? And Moschitti responded with these nonresponsive sovereign citizen type answers. The magistrate asked him more than once, and Moschitti again replied with these nonsense answers. And so at that point, the magistrate judge appointed Mr. Villarreal to represent him. If we were to accept your idea of the three weeks, I mean, I'm having trouble with kind of what the remedy is for that. The morning of trial, he didn't during that period confess and you're asking to suppress that or provide some evidence that should be suppressed or something like that. There's nothing concrete in those three weeks. You're saying he gets another trial, but the morning of trial, he said he wanted to proceed pro se. So the trial that would be, he would get again, he clearly and unequivocally, even by your admission, wanted to proceed pro se. So I'm having a little trouble with the remedy. I understand that if he's deprived of counsel at an important point, and something happened in that point that we can rectify, but I'm having trouble understanding how giving him another trial now with counsel that he said he didn't want is really rectifying the error you're complaining of. Well, the denial of the right to counsel is per se prejudicial. So it doesn't matter what the hypothetical result would have been otherwise or what the defendant or an attorney could have done during that period of time when he was deprived of counsel. If there's been a denial of the right to counsel, that's per se prejudicial. But he had counsel. He had Mr. Virial this whole time. So it's not like the judge said, Virial, get out of here, don't talk to him anymore, and so he's just sitting there in the desert. He has Virial completely available to him, completely available to do whatever he wants. He does want to proceed pro se. He proceeds pro se. I understand the concept of it's very fundamental to have counsel, and I'm not arguing with that. But it's difficult for me to understand the theory here, given the facts we have. They're kind of unusual, but I don't understand really how we would rectify what you're complaining of something kind of specific that I don't think is actually consistent with the facts and with what happened. He had Virial the whole time. The judge is trying to he just keeps wanting to change counsel. The judge isn't going to do that. But he's like, here's Virial. You got him. You want him. Take him. Have him. But in the meantime, you don't want him. Well, then you're going to have to proceed pro se. There's no other choice. The defendant doesn't get to keep changing counsel that's appointed by the court. Well, he wasn't even asking to change counsel. He was just, in his mind, he didn't need an attorney because the proceedings weren't legitimate in the first place. But he never said, I want to represent myself. He just said, I don't want Mr. Virial. I don't want any attorney. That's not the same thing as saying, I want to represent myself. Is there anything left but representing himself? How many times can he refuse or dismiss counsel without that constituting a clear determination by him, if he's going forward, to be representing himself, even if he doesn't mouth those words? Well, I think that goes to the obvious question here is, what's the district court supposed to do in this situation when you have a defendant behaving this way? And the answer is to keep counsel on the case. Well, he did. He did. But only as standby counsel. Okay. I mean, does it make any difference in those three weeks? I understand at trial how it makes a difference. I completely get that. But in those three weeks, he has counsel. He has someone he can call up and ask him questions. He has counsel every bit as much as anybody who doesn't call their lawyer and still goes off and does what they want. So why, what can we really do about those three weeks? He has counsel. He elects not to use him. Then he goes to trial and elects not to use him. And clearly, by your own admission, elects not to use him. I'm just having trouble with this argument. I understand the kind of the theory, the big picture, the importance of the Sixth Amendment, all that I get. But as it applies here, it seems lacking. I see my time has expired. May I answer the question? Let's give you five more minutes at this time, Mr. Bogan. Okay. Because you haven't been able to make your argument yet. We'll give you five uninterrupted minutes. Well, I'm happy to respond to any questions that might arise. Well, I think you've responded enough. You're entitled to make an argument, too. Okay. Well, to address Judge Haines' question, it's not clear that the district court actually appointed Mr. V. Real in the capacity of doing whatever it is that he might have been able to do to assist Mr. Meschidi. The judge said that Mr. V. Real would be appointed as standby counsel, and there was some question about whether Meschidi would have access to any of the discovery in the case. And that's the context in which the court said, well, you can review the discovery with Mr. V. Real. But at the trial itself, and this goes to the second issue that we raised, Mr. Meschidi complained that during that three weeks, he wasn't able to actually materials in the facility that he was in, because apparently he was in segregation for a reason that's not clear from the record, and that all he had was some lined paper with a pen that skips. And so he was unable to do the sort of things that the government was able to do during those three weeks, such as file proposed jury instructions. The government filed a notice of intent to use evidence under Rules 404B and 609. The government submitted a witness list. Meschidi couldn't do any of that, according to him. And that is a critical period of time leading right up to trial and being able to prepare for that. And there's, I think the record as a whole reflects that Mr. Meschidi wasn't probably making that up, because his earlier pro se pleadings in the months prior, as odd as they were, cited legal authority. He was able to . . . he had them all notarized for some reason. He was able to file them with the district clerk, but then in this final three weeks before trial, he did none of that, and he was unable to, and he was left without counsel, and it was error for the district court to do that. That sufficient? Yes, Your Honor. Okay. Thank you. You'll still have five minutes on the rebuttal. Yes. May it please the Court. The issue, the narrow issue that's raised is deprivation of counsel within that 19-day period between the June 17th motions hearing and the trial that started on July 6th. And as Judge Haynes pointed out, there's absolutely no doubt at the trial that he says, I want to be pro se, I don't want a lawyer, and I don't want Mr. Villarreal. And Judge Weiner, your account was right. He had four lawyers at the district court and then the fifth lawyer on appeal. He had two retained lawyers. He had one appointed lawyer, and then he had the Assistant Federal Public Defender, Mr. Villarreal. And when he says at the hearing, I haven't accepted Mr. Villarreal as my attorney and I don't consent to him being my attorney, the Court construes this as a request to proceed pro se. And the argument is, well, that firing an attorney isn't sufficient, but as was pointed out by the Court, the circumstances here are important. Villarreal has no conflict of interest. He says later on at the trial, I have nothing against Mr. Villarreal, so there's no problem with communication with Mr. Villarreal. He's competent, he's prepared for trial, and he's announced that he's ready for trial. I do agree with your opposing counsel that he was, in fact, that the judge misconstrued his statements at that, I guess it was the June hearing, the earlier hearing. And so for 19 days, he was deprived of full counsel. I mean, he had standby counsel, but he was deprived of full counsel. Then what is the remedy? If all the other facts are as you say, but we were to conclude that the judge erred at that pretrial hearing, and so there was these 19 days that he had standby but not full counsel, then what is the remedy? Well, if the remedy, if the remedy is if it turns out to be a critical stage, the critical stage designation is important, because if it's a critical stage, then prejudice is presumed. But if it's not a critical stage, then prejudice isn't presumed, and you could go into whether there was prejudice by denying, if there was a denial, by denying counsel at that point. Well, it's the government's position that by the time he went to trial and maybe three weeks before that, he was going pro se, is that right? That's absolutely the government's position. All right. Then turn to the second issue. Assume he is validly proceeding pro se. What about those three weeks where he couldn't get law books or anything else? Well, the law book issue has been decided, and there's no right for someone who rejects counsel to have access to the law books. The other prejudice, though, is the claims of prejudice are that there's been proposed jury instructions filed, witness lists, 404B notice, and impeaching convictions notice. Well, there was no 404B evidence at the trial. There was no impeachment by convictions. He had all the discovery. These notices, my position would be these notices didn't require any pretrial response by him. They were preparatory matters, and there wasn't, therefore, the potential for substantial prejudice for not having counsel, if indeed he did not have counsel. So that would be the analysis, I think, as far as prejudice and as far as remedy. But as far as his election to proceed pro se, because Villareal is competent and because it's implicit that there's not going to be a fifth or sixth attorney appointed, there's no reason to fire Mr. Villareal. So if the only two options are to proceed with the only counsel that you're constitutionally entitled to, and you reject that, it necessarily means that you're electing to proceed pro se. That's an election by conduct. So it's the case. Is there any harm in those three weeks from the designation of Mr. Villareal as stand-by counsel? I understand at trial that there's a difference between being counsel and stand-by counsel. But it seems to me, actually, that Mr. Meschiti gets a benefit, because the distinction from the clerk's office is they're not going to let you file stuff pro se if you have counsel. If he's only stand-by, then you can file stuff pro se, but you can also call him, and you can also rely on him. You can also ask him to explain this notice or explain the jury issue or file something. So you kind of get the best of both worlds. So in that circumstance, where it's not a total deprivation of counsel, but rather the presence of stand-by counsel pretrial, can we presume prejudice? Is that an appropriate time to presume prejudice under those kind of specific facts?  Roberts. Not because of the circumstances of this case and the availability of stand-by counsel and his and the courts telling him to utilize the stand-by counsel. So the first point on clear choice is what you were saying, Judge Haynes. It's a continuation when he says I don't want to proceed pro se, I don't want any attorney. It's not that you're taking the trial part and looking at it in isolation. It's perfectly consistent with what happened at the hearing. And so it's a continuation of his desire. It's a validation of his desire to proceed pro se back at the hearing. And then secondly, you could say it's a clear choice, it's an implicit waiver by conduct because he only had two options and he rejected the only other option. And then the third way, the third way you could say that there's an implicit waiver where you do not need an express statement is obstructive dilatory conduct. And counsel's trying to perceive this as not that, but he's continuously trying to obstruct and avoid the criminal proceedings with his frivolous and time-wasting UCC arguments. So you agree with the flat, unqualified statement by Mr. Bogan that he never said I want to represent myself? He did not say that at the hearing, but 19 days later at the trial, he unqualifiedly said I want to be pro se and I don't want a lawyer. And he absolutely clearly said he wanted to proceed pro se at the July 7th trial. Yes. So you do not agree that he said that literally and flatly? You're relying on his conduct as well as? I'm relying on his conduct as well as the consistent statements from the trial that it's a clear and unequivocal statement and it's consistent with what happened at the hearing. And as to the question, it wasn't brought up at argument, but it was brought up three times in the reply brief, and I've got to, I need to address that. It's, there was an argument made that he did say, that he did say that he didn't want to represent himself. And they get to this argument by his statement, I do not consent to act as a surety for any case or for any entity that you have on your indictment. And from that, they're saying that he's saying I don't consent to represent myself. But at the beginning of the trial, the whole surety argument came out, and excuse me for this quote, but it says, I look at the indictment, you have the corporation United States of America on there versus another corporation, which you've named and neither of them is real. I'm real. Now, I understand that you want somebody to be a surety for that, but I'm not assuming surety for that. I'm not claiming that's me. In fact, because of that UCC-1 filing, I have a priority holding on that property, because that's what it is. It's a piece of property. So he's not, he's not making the argument that he wants to proceed per se. He's making the argument that he's not subject to the indictment because of the UCC filing. The Court's Furetta Inquiry, and there's, and there's cases that, that where there's an obstructionist defendant, an uncooperative defendant, that you, still a necessity to make a Furetta-like monologue, or if there's a refusal to engage in a dialogue, which I submit that there was here, a refusal to engage in a dialogue. And here, the Court really, it does a fairly good job about that. He, as far as background information, the Court already had his competency hearing material two months before this hearing about his above-average intelligence, his education, his work history, his criminal history. So he, the Court had that background, and it was, it would be a better source than Moschitti's obstructionist answers. And the Court delves into, detailedly, the, the bank robbery statute, the indictment, that he faced a long prison term, statutory maximum of 20 years. The Court correctly predicted the guideline range of 121 to 151 months. He talked about the government was required to produce exculpatory material. He said you could review discovery with, with the assistant public defender, that his jurisdictional objections were preserved for appeal, that he had to have the proper decorum at the trial. And then he said, you really need to have a lawyer many, many times. And then no less than five times, it's inadvisable, always a bad idea, a very bad idea. The essence of the Feretta analysis is that he's aware of the nature of the charges and the consequence of the proceedings. And the Court did a fairly good job of, of, of doing that here, so that he did understand the dangers and disadvantages of self-implementation. The, as to the continuance issue, he did not make any, any, any, any, any, any, any motion for a continuance at the beginning of the trial. What he complained about was, I'm in administrative segregation. I only have lined paper and my pen skips. And the, the, the Court can't be blamed for not taking that as a, as a motion for a continuance. So the analysis on whether there's a substantial abuse of discretion for not sua sponte, have, ordering a continuance, or for having a continuance right before the last two witnesses of the trial, where he does say, he does say, I wish I could subpoena witnesses or present evidence. He never says what witnesses or what evidence, and even on appeal, there's never any statement about what witnesses or what evidence would, would have been potentially helpful. He had the assistance of four lawyers. It wasn't a complicated case. It's, the only issue as to whether he was knowingly the getaway driver at a bank robbery case, a six witness case. The court found he had all the discovery. So as to the, the, the things that were filed, he's, he's not proposed any different voir dire questions or jury instructions. Or, and he can't point to any witnesses or, or evidence that would have been significant. So there wasn't an abuse of substantial discretion in denying the continuance. And that's all I have, Your Honor. Thank you. Thank you, sir. Mr. Bogan, you have five minutes, four minutes, I'm sorry. Go ahead. There's been some discussion about what's the harm here, or what sort of harm analysis would apply. And this court has held that this is not the type of error that it is subject to a harm analysis. That if there's the denial of the right to counsel, that is at a critical stage of proceedings, that's per se prejudicial. And it doesn't matter whether there's any showing of harm. And cases that say that are Chapman and Virgil, which are cited in the briefs. I'd also like to address the, the government's contention that by his pro se filings referring to himself as a surety for the, the, the straw man, what he referred to as the ends legis, named in the indictment. It's all nonsense. If you read that stuff, it doesn't make any sense whatsoever. And as this court said in Burton versus Collins, when you have a defendant who's saying things that don't make any sense and which could reasonably be understood, you know, one way or the other, that's not a clear and unequivocal invocation of the right to self representation. And so, in this case, it, that, all of that, you know, nonsense actually weighs against what the district court did. I don't want Mr. VARL is not nonsense. He didn't say I don't want a surety and the judge somehow construed that as a lawyer. He said he didn't want Mr. VARL. That was pretty clear. Well, he said he didn't, he said he didn't want any lawyer because he believed that he was immune from prosecution in this case. And actually, at the, at the hearing, when his first retained attorney had moved to withdraw, the magistrate judge asked him, well, does he want to represent himself? And the attorney said, he hasn't said that, that he just believes that he's immune from prosecution. So, it, it, it's difficult to, to, to wrap our minds around it. But Moschini was not saying one way or the other what he wanted to do. He was just. By default, if you reject counsel repeatedly and do this sovereign citizen garbage, the, by default, that means that without counsel, you must represent yourself. There's no third option there. No, the, by default, there is a right to counsel, and that remains effective until it's clearly and unequivocally waived. And the right to self-representation doesn't come into being. The issue here is whether all that taken in, in a complete envelope does or does not constitute rejection, repeated rejection of counsel. If there is not a clear and unequivocal request to proceed pro se, then counsel must remain on the case, and that's what the district court should have done. Well, that's what the district court did with a standby counsel. Well, a standby counsel is not a substitute for the sixth and the right. There is no other option. Well, there is. Simply keep, in this case, Mr. V. Areal on the case. Now, at that point, there likely would have been difficulties with Mr. V. Areal representing Mr. Moschini, you know, whether, you know, Mr. Moschini would have cooperated or not. I mean, that's, that's Mr. V. Areal's problem. Fourth lawyer that Moschini rejected and fired or told the court he wasn't going to let him represent him. Well, it's, I'm not sure that that number is exactly correct. Initially, early on in the proceedings, Moschini was going to try to hire an attorney named Campione. He didn't pay him. There was an attorney appointed for about a week, and then Mr. Moschini hired somebody to represent him. That was the attorney who moved to withdraw at Moschini's request. And then that's when the magistrate judge appointed the federal public defender to represent him. I've got Campione, Camara, and Langlois before V. Areal. Yes. Campione doesn't appear to have actually represented him during that time. Apparently, Moschini had said he was going to try to hire Mr. Campione. He never did. And then the district court appointed Mr. Camara. And then within a week or so, Mr. Moschini hired Mr. Langlois, and he entered an appearance, and he was on the case until he moved to withdraw at Moschini's request, and then Mr. V. Areal was appointed. We have your argument. Thank you. Thank you.